**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**JUDITH E. DUGDALE,**
**Plaintiff,**

**v.** **Civil Action No. 4:05cv138**

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,**
**Defendant.**

**OPINION AND ORDER**

Pending before the court are plaintiff's Motion to Remand to the Circuit Court for the City of Hampton, Virginia and defendant's Motion to Dismiss, or, in the alternative, Motion for a More Definite Statement. After examination of the record, the court determines that the facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. For the reasons set forth herein, plaintiff's motion to remand is **GRANTED**. As granting this motion removes jurisdiction from this court, the court offers no opinion on defendant's motion.

## I. Factual and Procedural History

Plaintiff, Judith E. Dugdale, commenced this action against defendant, Nationwide Mutual Fire Insurance Company ("Nationwide"), for bad faith claims handling pursuant to a flood insurance policy (Policy # 5 4004 5138 0) and a homeowner's insurance policy (Policy # 53 45 HO 250907) issued by Nationwide. Plaintiff appears to have filed claims and recovered funds from Nationwide under both policies based on the severe damage caused to her residence in September of 2003 from the winds and flooding of Hurricane Isabel. However, unsatisfied

with Nationwide's claims handling, on September 30, 2004, approximately one year after the hurricane, counsel for the plaintiff faxed a demand letter to "Carol McGill, Nationwide Insurance Company" and "Roger Clary, [FEMA] Taskforce Claims Examiner." (Pl. Mo. to Remand, Ex. 1-A). The demand letter alleges that both Nationwide and the Federal Emergency Management Agency ("FEMA") mishandled plaintiff's insurance claims and that based on Nationwide's and FEMA's bad faith, Ms. Dugdale "spent hundreds of hours and thousands of dollars" obtaining unnecessary estimates. Furthermore, the letter contends that Ms. Dugdale was "forced to live for an extended period of time in her house, which was rapidly growing mold, with doors that would not open or close, with floors that were warped and dangerously sloping, without electricity, water, gas, heat, modern conveniences or appliances or working plumbing." Id. The heading of the demand letter states in part:

> Your Insured: Judith Dugdale
> Date of Loss: September 18, 2003
> Your Policy Number: NW-5-4004-5138-0
> Your Claim Number: 20802S2

Id. Based on the alleged "bad faith handling and processing of [her] claim," plaintiff's demand letter seeks an "ex gratia" payment of $15,000. Id.

Three months after the demand letter was sent, on December 30, 2004, plaintiff commenced the instant lawsuit by filing a Warrant in Debt in the General District Court for the City of Hampton, Virginia seeking $15,000 from Nationwide. The basis for plaintiff's claim was listed as "breach of insurance contract; underpayment; bad faith settlement; ex gratia payments." (Def. Notice of Removal, Ex. A.) On January 26, 2005, Nationwide filed a petition for removal to the Circuit Court for the City of Hampton, Virginia. After removal to Hampton Circuit Court, defendant filed a motion for a bill of particulars. Defendant's motion was granted, and the circuit

court ordered plaintiff to file such bill by August 26, 2005 and ordered defendant to file its responsive pleading by September 9, 2005. (Pl. Mo. to Remand, Ex. 3) As instructed, plaintiff filed her bill on August 26, 2005; however, defendant failed to timely file a responsive pleading. Defendant did file a motion for an extension of time to file a responsive pleading; however, such motion was denied. (Pl. Mo. to Remand, Ex. 6)

After the circuit court denied defendant an extension to file a responsive pleading, on September 19, 2005, defendant filed a notice of removal in the United States District Court for the Eastern District of Virginia. Plaintiff responded with a motion to remand to the Hampton Circuit Court, alleging that defendant failed to remove the matter within thirty days as required by 28 U.S.C. § 1446(b). Defendant opposed remand, and furthermore, filed a motion to dismiss, or in the alternative, a motion for a more definite statement, claiming that plaintiff's allegations were preempted by federal law. Both parties filed a timely response to the opposing party's motion as well as a timely reply to the opposing party's response; thus, the instant matter is now ripe for review.

## II. Discussion

The burden of establishing removal jurisdiction rests with the party seeking removal. Mulcahey v. Columbia Organic Chem. Co., 29 F.3d 148, 151 (4th Cir. 1994). Any doubts as to the propriety of the removal are to be resolved in favor of remand to state court. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108 (1941); Mulcahey, 29 F.3d at 151 ("Because removal jurisdiction raises significant federalism concerns, [courts] must strictly construe removal jurisdiction."). Here, the underlying dispute relates in part to claims handling of a Standard Flood Insurance Policy ("SFIP") issued pursuant to the National Flood Insurance Program

("NFIP"), a federal program administered by FEMA. Plaintiff asserts that this matter should be remanded, as defendant failed to timely seek removal to federal court. Defendant contends that it was unaware of a removable issue until after plaintiff filed her bill of particulars on August 26, 2005, and that removal properly occurred within thirty days of such date. See 28 U.S.C. § 1446(b). In the alternative, defendant contends that pursuant to 42 U.S.C. §§ 4071-72, federal district courts have exclusive jurisdiction over disputes involving unpaid or underpaid claims under the NFIP. Furthermore, although not extensively argued, defendant contends that the SFIP under which plaintiff is seeking relief contains a forum-selection clause requiring that actions pursuant to the contract be litigated only in federal court.

Considering these issues, the court declines to construe 42 U.S.C. § 4072 as creating exclusive federal jurisdiction for claims against private insurance companies and finds that although federal jurisdiction was proper under 28 U.S.C. § 1331, the defendant failed to timely remove this matter to federal court. Furthermore, assuming the flood insurance contract in issue contained a forum-selection clause, as defendant failed to timely challenge venue in state court, defendant is deemed to have waived such objection; therefore, remand is proper.

**A. Jurisdiction Under the National Flood Insurance Program**

Congress established the National Flood Insurance Program by passing the National Flood Insurance Act of 1968. See 42 U.S.C. §§ 4001, et seq. Under the NFIP, the director of FEMA has the authority to use private insurance companies, referred to as "Write-Your-Own" ("WYO") companies, to help administer the program. See Battle v. Seibels Bruce Ins. Co., 288 F.3d 596, 598-600 (4th Cir. 2002); 42 U.S.C. §§ 4071-72. The WYO companies directly issue federally underwritten SFIPs to the public. The SFIPs, are as their name suggests, standard; and

by FEMA regulation, WYO companies are not permitted to alter their terms. See Battle, 288 F.3d at 599.

Valid insurance claims brought pursuant to an SFIP are essentially paid for by the federal government, as FEMA underwrites the risk. Id. at 600. Thus, a significant federal interest exists in the uniform application of the NFIP as it directly impacts the federal coffers. Additionally, the Fourth Circuit has held that "the law is well settled that federal common law alone governs the interpretation of insurance policies issued pursuant to the NFIP." Id. at 607. Therefore, as the government has a substantial interest in monitoring the NFIP and federal common law controls SFIP interpretation, federal question jurisdiction exists under 28 U.S.C. § 1331 for disputes between claimants and WYO companies involving the interpretation of SFIPs. See Studio Frames Ltd. v. Standard Fire Ins. Co., 369 F.3d 376, 379-80 (4th Cir. 2004). Furthermore, pursuant to 42 U.S.C. § 4072, it is clear that exclusive federal jurisdiction exists for SFIP claims against the director of FEMA; however, a circuit split exists concerning whether § 4072 establishes exclusive federal jurisdiction for SFIP claims against a WYO company. The Fourth Circuit has recognized the circuit split; however, has declined to address this "difficult statutory construction question." Battle, 288 F.3d at 606-09; see Studio Frames, 369 F.3d at 379-80 (recognizing "substantial disagreement among the circuits" but declining to address such split because federal jurisdiction was clear under 28 U.S.C. § 1331). Although the text of § 4072 refers only to suits against "the Director" of the NFIP, several courts have held that exclusive federal jurisdiction extends to suits against a WYO insurance company because "a suit against a WYO company is the functional equivalent of a suit against FEMA." See, e.g., Van Holt v. Liberty Mut. Fire Ins. Co., 163 F.3d 161, 166-67 (3d Cir. 1998).

Here, Nationwide asks this court to extend the text of § 4072 beyond suits against "the Director;" however, the court declines to adopt an expansive interpretation of what otherwise appears to be an unambiguous provision. As discussed in detail in Battle, when Congress enacted the National Flood Insurance Act of 1968, it created two alternative programs to administer the NFIP, the "Industry Program" governed by 42 U.S.C. §§ 4051-56, and the "Government Program" governed by §§ 4071-72.[1] In creating alternatives, Congress gave the program's administrator "discretion to choose between them." Battle, 288 F.3d at 598 (quoting Downey v. State Farm Fire and Casualty Co., 266 F.3d 675, 678-79 (7th Cir. 2001)). In 1977, the NFIP's administrator declared the "Industry Program," which used private insurers to underwrite flood insurance, to be unworkable. As a result, the "Government Program" was implemented and continues today. The Government Program uses private insurance companies to issue policies and help administer the program; however, the risk is underwritten by FEMA.

---

[1] 42 U.S.C. § 4053 governs the "Industry Program" and states:

> The insurance companies and other insurers which form, associate, or otherwise join together in the pool under this part may adjust and pay all claims for proved and approved losses covered by flood insurance in accordance with the provisions of this chapter and, upon the disallowance by any such company or other insurer of any such claim, . . . the claimant . . . may institute an action on such claim against such company or other insurer in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.

42 U.S.C. § 4072 governs the "Government Program" and states:

> In the event the program is carried out as provided in section 4071 of this title, the Director shall be authorized to adjust and make payment of any claims for proved and approved losses covered by flood insurance, and upon the disallowance by the Director of any such claim . . . the claimant . . . may institute an action against the Director on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.

See Battle, 288 F.3d at 598-99; Downey, 266 F.3d at 678-79. The fact that two alternative programs were created by Congress, along with two distinct jurisdictional provisions, conclusively establishes that Congress recognized the difference in the structure of the alternative programs and chose to enact different provisions creating exclusive federal jurisdiction. If FEMA underwrites the risk, Congress chose to create exclusive federal jurisdiction for lawsuits against "the Director." If private insurance companies bear the risk, Congress chose to create exclusive federal jurisdiction for lawsuits against "insurance companies and other insurers."

The NFIP administrators have freely elected to implement the Government Program, and with such decision necessarily follows Congress' clear expression that under such framework, only suits against "the Director," were accorded exclusive federal jurisdiction. The Seventh Circuit came to the same conclusion in Downey, 266 F.3d 675, holding that federal jurisdiction was not exclusive in a suit between an insured and a WYO company because all litigants were in the private sector and the text of § 4072 was "limited to suits against the Director." Id. at 680. Furthermore, the Seventh Circuit denied a petition for a rehearing of Downey en banc, stating that WYO insurance companies "cannot be called 'the Director' even when they administer a program on behalf of the FEMA." Downey v. State Farm Fire and Casualty Co., 276 F.3d 243, 245 (7th Cir. 2001) (hereinafter "Downey II"). The court added that it saw "no good reason why § 4072 should be read to mean something that it does not say." Id. Likewise, this court declines to actively interpret the words "the Director" to mean something they do not say.

Although § 4072 only refers to "the Director," FEMA has written and re-written extensive regulations to implement the NFIP authorized by Congress with the intent to create exclusive federal jurisdiction for all SFIP disputes. Battle, 288 F.3d at 608 n.18 (recognizing

FEMA's stated objective for revisions to the C.F.R. as clarifying that SFIP claim disputes must be heard in federal court); see also Downey II, 276 F.3d at 244 (noting that FEMA, as amicus curiae, disagreed with the Seventh Circuit's previous interpretation of § 4072 as applying only to suits against "the Director"). However, FEMA's expansion of the Government Program, whether anticipated or unanticipated by Congress, cannot be used retroactively as evidence that Congress intended the word "Director" to encompass privately owned insurance companies. Thus, even though FEMA, the NFIP administrator, has sought to establish exclusive jurisdiction in federal courts, this court declines to read into the statute words that are not there.[2] Rather, the court recognizes that although FEMA regulations have, practically speaking, created exclusive jurisdiction in federal courts, such regulations do not create ambiguity in Congress' words.

**B. Timely Removal**

Although the court declines to creatively interpret § 4072 as creating exclusive federal jurisdiction for SFIP claim disputes brought against a WYO company, federal question jurisdiction clearly exists under 28 U.S.C. § 1331 for such suits. Studio Frames, 369 F.3d at 379-80. Therefore, Nationwide, a WYO company, clearly had the legal right to remove the instant dispute to this court. However, as the court concludes that defendant failed to timely seek removal, remand is proper.

**1. Thirty-day removal period**

A civil action filed in state court that is authorized under § 1331 to be filed in federal

---

[2] FEMA's interpretation of § 4072 is not binding on this court as the court should defer to an agency's interpretation only when the statute is ambiguous "for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984).

court is removable by the defendant. See 28 U.S.C. §§ 1441, 1446. To properly remove such action, a notice of removal "shall be filed within thirty days after the receipt by the defendant . . . of a copy of the initial pleading." 28 U.S.C. § 1446(b). However, if the case as stated in the initial pleading is not removable, the notice of removal "may be filed within thirty days after receipt by the defendant . . . of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable." Id. Here, the parties agree that defendant received the initial pleading more than eight months before filing the notice of removal; however, the parties dispute when it could "first be ascertained" that this matter was removable.

Petitioner initiated this action by filing a Warrant in Debt in Hampton General District Court that listed the basis of her claim as "breach of insurance contract; underpayment; bad faith settlement; ex gratia payments." (Def. Notice of Removal, Ex. A.) It is clear that such pleading, considered alone, is insufficient to establish federal question jurisdiction, as the NFIP is not implicated by these brief statements. Defendant argues that it was not until August 26, 2005 when plaintiff filed her bill of particulars stating that she contracted with defendant to obtain an SFIP that defendant received a "pleading, motion, order, or other paper" indicating that the case was removable. On the other hand, plaintiff contends that the September 2004 demand letter constitutes an "other paper" for the purposes of § 1446(b) and that the demand letter proves that at the time of filing of this lawsuit, defendant was immediately aware this matter was removable.

**2. "Other Paper"**

Although 28 U.S.C. § 1446(b) does not define the term "other paper," federal courts have repeatedly interpreted it, although its meaning is not universal. Defendant cites several district

court cases that interpret "other paper" to mean a formal paper which is filed or recorded within the state court litigation. See, e.g., Smith v. Int'l Harvester Co., 621 F. Supp. 1005, 1009 (D. Nev. 1985); Riggs v. Cont'l Baking Co., 678 F. Supp. 236, 238 (N.D. Cal. 1988). However, defendant fails to distinguish controlling Fourth Circuit precedent indicating that an "other paper" need not be a formal filing. Yarnevic v. Brink's, Inc., 102 F.3d 753, 755 (4th Cir. 1996) ("We do not think § 1446(b) requires that the 'motion, order or other paper' be part of the state court record . . . . The 'motion, order or other paper' requirement is broad enough to include any information received by the defendant, whether communicated in a formal or informal manner.") (citations omitted) (emphasis added). Furthermore, this court has previously concluded that a settlement letter constitutes an "other paper" under 1446(b). Lien v. H.E.R.C. Products, Inc., 8 F. Supp. 2d 531, 534 n.7 (E.D. Va. 1998); see Rodgers v. Northwestern Mut. Life Ins. Co., 952 F. Supp. 325, 327 (W.D. Va. 1997) (stating the court had "little hesitation" in finding that plaintiff's settlement letter constituted an "other paper" within § 1446(b)). Therefore, the court concludes that the September 2004 demand letter, although received in an informal manner, constitutes an "other paper" within the meaning of 28 U.S.C. § 1446(b) and illuminates the objective information received by defendant in conjunction with the instant lawsuit.

**3. Information within the Demand Letter**

After concluding that the demand letter constitutes an "other paper," the court's next inquiry involves whether the information within the demand letter was sufficient to indicate that the case was removable. Although plaintiff contends that the burden is on defendant to scrutinize the case if the initial pleading is indeterminate, such position is untenable in light of the Fourth Circuit's opinion in Lovern v. Gen. Motors Corp., 121 F.3d 160 (4th Cir. 1997) which states:

> [W]e will not require courts to inquire into the subjective knowledge of the defendant, an inquiry that could degenerate into a mini-trial regarding who knew what and when. Rather, we will allow the court to rely on the face of the initial pleading and on the documents exchanged in the case by the parties to determine when the defendant had notice of the grounds for removal . . . .

Id. at 162. In Lovern, a diversity case, the court held that when the complaint failed to state the plaintiff's state of citizenship, the defendant was not required to investigate the plaintiff's citizenship to determine if diversity existed. Id. at 161-62. However, while investigation into the plaintiff is certainly not required, Lovern does not stand for the proposition that a defendant can ignore facts that are readily known to it. For example, although Lovern establishes that a defendant need not investigate a plaintiff's citizenship, certainly a defendant is responsible for knowing its own citizenship, and could not ignore such only to later claim that subsequent documents revealed to the defendant its own citizenship. The Lovern opinion suggests the same conclusion, as it assumes that the "30-day clock" was triggered on the date the defendant was notified of plaintiff's citizenship by an "other paper." Id. at 163.

Turning to the instant facts, although plaintiff's Warrant in Debt does not specifically reference the NFIP or an insurance policy number, it clearly refers to "breach of [an] insurance contract," and seeks $15,000 in damages for bad faith claims handling as well as "ex gratia payments." (Def. Notice of Removal, Ex. A.) Looking to the demand letter, a document exchanged in conjunction with the case, the heading of page one of the letter states that "Judith Dugdale" is the insured, that she suffered a loss on "September 18, 2003," and that the Policy Number issued by Nationwide is "NW-5-4004-5138-O." (Pl. Mo. to Remand, Ex. 1A.)[3]

---

[3] On January 20, 2006, this court ordered Nationwide to submit to the court the policy numbers for the insurance policies issued to plaintiff. Defendant responded on January 25, 2006 confirming that plaintiff's flood insurance policy number was "5 4004 5138 0."

Furthermore, the heading states that the claim number under such policy is "20802S2," indicating that Nationwide had previously processed plaintiff's flood damage claims and assigned a unique identifying number to such claims. The remainder of the demand letter repeatedly mentions bad faith claims handling by both Nationwide and FEMA and requests a $15,000 "ex gratia" payment based on "the bad faith handling and processing of [her] claim." Id. Therefore, based on the information in the demand letter, which mirrors the grounds for relief in the Warrant in Debt, defendant was on notice that the instant dispute involved a flood policy issued by Nationwide pursuant to the NFIP. The fact that Nationwide had already processed claims under such policy for damage resulting from Hurricane Isabel prohibits defendant from establishing that it was unaware that plaintiff was seeking damages under such policy.

Considering the instant facts in light of Lovern, here, the demand letter listing plaintiff's flood insurance policy number and claims number was in defendant's possession prior to the Warrant in Debt being filed. Therefore, there is no need for a "mini-trial" or inquiry into "who knew what and when." Lovern,121 F.3d at 162. Nationwide knew plaintiff was disputing her SFIP claims before she even formally filed her lawsuit. Thus, unlike in Lovern, the removeable nature of this matter was not obscured and only determinable if defendant performed an investigation into the plaintiff. Rather, here, Nationwide received a demand letter indicating the flood policy number and claims number associated with plaintiff's SFIP; both numbers were assigned by Nationwide. Just as the defendant corporation in Lovern was responsible for knowing the state or states of its legal citizenship, here, Nationwide is responsible for knowing that the policy number and claims number that it assigned, relate to a flood insurance policy.

Thus, the demand letter, an "other paper" within the meaning of 28 U.S.C. § 1446(b), put

Nationwide on notice that plaintiff was asserting claims pursuant to an SFIP. Therefore, relying on "the documents exchanged in the case," the court concludes that the information in the demand letter was sufficient to indicate that the case was removable.[4] The court simply will not allow Nationwide to ignore pertinent evidence in its possession or the legal impact of such. See Hoffman v. Vulcan Materials Co., 19 F. Supp. 2d 475, 478 n.3 (M.D.N.C. 1998) (noting courts' differing positions on a defendant's duty to ascertain the amount in controversy but stating that "a defendant should not be allowed to ignore plain evidence that plaintiff seeks damages in excess of the federal jurisdictional amount").

**4. Timing of Removal and Waiver**

As stated in the previous section, the court concludes that plaintiff's demand letter, prior claims under the flood policy, and Warrant in Debt put defendant on notice that the instant lawsuit was filed pursuant to a flood policy governed by the NFIP. Accordingly, defendant had thirty days from the filing of plaintiff's Warrant in Debt to file a notice of removal. See Williams v. Safeco Ins. Co. of America, 74 F. Supp. 2d 925, 929 (W.D. Mo. 1999) ("[T]he thirty-day time limit for filing a notice of removal begins to run when the defendant has actual notice of the amount in controversy [and] the defendant had actual knowledge that the amount in controversy exceeded $75,000 when the demand letters were made."); Central Iowa Agri-Systems v. Old Heritage Advertising and Publishers, Inc., 727 F. Supp. 1304, 1305 (S.D. Iowa 1989) ("[T]he plaintiff's pre-suit demand letter was an 'other paper' from which it could reasonably 'be ascertained' that the case was then removable to federal court; [therefore] Defendant waived its

[4] All SFIP are governed by the NFIP and Nationwide explains in its motion to dismiss that "[o]bviously, in this circumstance, Nationwide was acting as a WYO insurer." (Def. Mo. to Dismiss at 6.)

right to remove this case to federal court by not serving and filing its notice of removal to federal court within thirty days after the service of the initial lawsuit papers . . . .").

Here, defendant filed its notice of removal in the United States District Court for the Eastern District of Virginia on September 19, 2005, more than eight months after plaintiff filed her Warrant in Debt. Therefore, defendant's notice of removal did not comport with the strict thirty-day time limit of 28 U.S.C. § 1446(b). See Williams v. Farmers Home Admin., 623 F. Supp.1175, 1176 (E.D. Va. 1985) (stating that federal courts have "unanimously decided" that the time provisions of § 1446(b) are mandatory and should be strictly construed).[5] Defendant's argument that the thirty-day clock should not begin until the Bill of Particulars was received is without merit as the court will not "ignore plain evidence" in defendant's possession. Therefore, because Nationwide previously processed claims under the flood insurance policy and the demand letter indicated plaintiff's objection to claims handling under such policy, defendant was on notice that the instant matter was removable as soon the Warrant in Debt was filed.

**C. Forum-Selection Clause in the Flood Insurance Policy**

As discussed in Part A of this opinion, although the court declines to extend the unambiguous text of § 4072 to suits against WYO companies, the court recognizes that FEMA, the administrator of the NFIP, has taken significant steps in an attempt to establish exclusive federal jurisdiction. See Battle, 288 F.3d at 608 n.18; Downey II, 276 F.3d at 244. Most notably,

[5] Defendant argues, in the alternative, that the court should waive the thirty-day limitation period because "[v]arious courts have held that the time limitation period set out in the removal statute is not jurisdictional." (Def. Opp. to Remand p.7). However, defendant has failed to present any evidence indicating that plaintiff waived such time restriction; therefore, waiver is not appropriate.

FEMA has revised the language of the SFIP, which all WYO insurers must use without deviation, to include a provision indicating that federal courts are the exclusive forum for lawsuits involving claims under the SFIP. The changes to the text of the SFIP took effect on December 31, 2000, and Article 7(R) of the SFIP now provides:

> You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy. If you do sue, you must start the suit within one year after the date of the written denial of all or part of the claim, and you must file the suit in the United States District Court of the district in which the covered property was located at the time of loss. This requirement applies to any claim that you may have under this policy and to any dispute that you may have arising out of the handling of any claim under the policy.

44 CFR Pt. 61, App. A(1), Art. 7(R) (emphasis added). Although plaintiff has not submitted a copy of her flood insurance policy to this court, the court assumes that the SFIP terms were not altered by Nationwide, and therefore, plaintiff's insurance contract necessarily dictates that not only claims disputes, but any dispute "arising out of the handling of any claim" must be filed in federal court. Thus, by contract, plaintiff agreed to a forum-selection clause requiring suit to be filed in federal court.

However, although the instant dispute clearly arises out of the handling of a SFIP claim, and plaintiff agreed by contract to litigate such dispute in federal court, defendant cannot now attempt to enforce such contract provision in this court, as defendant failed to timely file an objection to venue in state court. Virginia law states that a "venue irregularity shall be deemed to have been waived unless the defendant objects to venue . . . within twenty-one days after service of process commencing the action, or within the period of any extension of time for filing responsive pleadings fixed by order of the court." VA. CODE ANN. § 8.01-264. Here, after the matter was removed from Hampton General District Court to Hampton Circuit Court, the court

entered an order requiring that plaintiff "provide a bill of particulars by August 26, 2005 and that the defendant shall file responsive pleadings by September 9, 2005." (Pl. Mo. to Remand at Ex.3.) Therefore, the latest possible date that defendant could have enforced the forum selection clause and objected to venue in circuit court was September 9, 2005. Defendant failed to object to venue by this date, and thus, waived enforcement of such provision. Therefore, defendant's argument that this court should exercise jurisdiction pursuant to the forum-selection clause is without merit.

**D. Alternative Grounds for Remand**

In the alternative, even if the court declined to find that a demand letter filed prior to an initial pleading could constitute an "other paper" under § 1446(b), based on the factual and procedural posture of this case, the court would still find that defendant failed to timely remove this matter. The court recognizes that it should not "interpret removal statutes . . . so strictly as to overwhelm the very right that they are intended to confer." 17th Street Associates, LLP v. Markel Intern. Ins. Co. Ltd., 373 F. Supp. 2d 584, 593 (E.D. Va. 2005). However, here, the federal interest at stake is not only that defendants have the right to have substantial questions of federal law tried in a federal court, but also that the federal removal process encourages "early removals to avoid unnecessary delay, waste of judicial resources, and forum shopping." Hoffman, 19 F. Supp. 2d at 478 n.3; Lovern, 121 F.3d at 163. Furthermore, the court is bound by the clear dictates of the Fourth Circuit and the Supreme Court; district courts must strictly construe removal jurisdiction and any doubts should be resolved in favor of remand. See Shamrock Oil, 313 U.S. at 108; Mulcahey, 29 F.3d at 151.

The facts and procedural posture of this case dictate that the court remand the case as the

court has substantial doubts that the matter was timely removed. Plaintiff's home was damaged in September of 2003 by a flood resulting from Hurricane Isabel and as plaintiff states in her motion to remand, "[s]hortly after the hurricane struck, Dugdale contacted the defendant and initiated a claim to have her home repaired." (Pl. Mo. to Remand at 1.) Plaintiff attached to her motion to remand an affidavit stating that "[f]rom the date [she] filed the initial claim with the Defendant . . . they constantly indicated their awareness that the damage to [her] home was a direct result of the flood" and that there had been "substantial correspondence, nearly all referencing [the] flood policy number 5400451380 and the Defendant's claim number, 20802S2." (Pl. Mo. to Remand, Ex.1.) Defendant's response did not challenge any of plaintiff's factual assertions.

Subsequent to having substantial interaction with defendant regarding recovery under her flood policy, including a demand letter seeking $15,000 which referenced both the flood policy number and associated claims number, plaintiff filed her case in Hampton General District Court seeking $15,000 in damages. Defendant responded by filing a "Petition for Removal" which pursuant to Virginia statute requires "the filing by [defendant] of an affidavit of himself, his agent or attorney, that he has a substantial defense to the action." VA. CODE ANN. § 16.1-92. Here, defendant's counsel filed an affidavit on defendant's behalf stating "that the defendant denies liability to the plaintiff either in tort or contract." (Pl. Mo. to Remand, Ex. 2) (emphasis added). Based on such affidavit, this court assumes that prior to swearing, under oath, to the Hampton Circuit Court that defendant had a legal defense to plaintiff's contract claims, the defendant at least considered the contract under which defendant swore a "substantial defense" existed.

Furthermore, on August 4, 2005, plaintiff filed a motion for a pre-trial scheduling order in Hampton Circuit Court. Plaintiff's motion indicates that on September 18, 2003, her residence, "which was insured by Defendant Nationwide, . . . was badly damaged by Hurricane Isabel." (Pl. Mo. to Remand, Ex. 7). In addition, the motion states that "[d]espite the passing of more than twenty-two (22) months, Defendant has failed to fulfill its obligations to Plaintiff." Id. Such statements contained in a "formal" motion filed with the Hampton Circuit Court are yet another indication that Nationwide was aware of the substance of this dispute and the removable nature of such. Thus, plaintiff's formal request for a pre-trial scheduling order considered in conjunction with informal communications, including the September 2004 demand letter, establish that, at the latest, defendant should have removed this matter within thirty days of August 3, 2005.

As a result, notwithstanding whether or not plaintiff's September 2004 demand letter qualifies as an "other paper," the court concludes that defendant "should not be allowed to ignore plain evidence" relating to the removability of this matter. Hoffman, 19 F. Supp. 2d at 478 n.3. Nationwide denied liability in contract under oath before the Virginia Courts and such assertion coupled with plaintiff's previous claims under the flood policy creates little doubt that the defendant was aware of the policy in issue. Furthermore, plaintiff's scheduling motion again referencing Nationwide as her insurer, her associated claims stemming from Hurricane Isabel, and twenty-two months of claims disputes, further establish that Nationwide could not be unaware of plaintiff's flood policy after over twenty-two months of claims disputes under such policy. Thus, under the court's alternative grounds for remand, Nationwide was required to remove the matter within thirty days of filing its affidavit of substantial defense in state court or,

at the latest, within thirty days of plaintiff filing her motion for a pre-trial scheduling order. As defendant's affidavit was filed on January 26, 2005 and plaintiff's scheduling motion was filed on August 4, 2005, plaintiff's September 19, 2005 notice of removal is deemed untimely; therefore this matter is not properly before this court.

**III. Conclusion**

It is clear to the court that FEMA, charged with facilitating the NFIP, desires that all cases involving claim disputes pursuant to an SFIP be filed in federal court. Although Congress has not modified 42 U.S.C. § 4072 to create exclusive federal jurisdiction, in virtually every case the lack of such modification is immaterial, as through modifying the text of the SFIP, FEMA has ensured that nearly all SFIP claim disputes will be litigated in federal court. However, the instant matter represents one of the rare situations when such dispute must be adjudicated by a state court, as the defendant failed to timely remove this matter or to timely enforce the forum-selection clause created by FEMA. Although the court understands FEMA's inclusion of the forum-selection provision in the SFIP as well as the numerous benefits to exclusive federal adjudication of SFIP claims, on these facts, it is inappropriate for this court to retain jurisdiction, as doing so would allow defendant to obtain relief in a federal forum subsequent to defendant's failure to follow the procedural requirements of the state court.

Therefore, as defendant failed to remove this matter within thirty days of the Warrant in Debt being filed, or in the alternative, within thirty days of either defendant's filing of its affidavit in substantial defense or plaintiff's filing of her scheduling motion, removal was untimely. Furthermore, it appears that defendant had until September 9, 2005, more than eight months after the Warrant in Debt was filed, to object to venue in Hampton Circuit Court;

however, defendant failed to timely make such objection. Thus, plaintiff's motion to remand to the Circuit Court for the City of Hampton, Virginia, is **GRANTED**.

The Clerk is **REQUESTED** to mail a certified copy of this Order to the Clerk of the Circuit Court for the City of Hampton, Virginia, as well as copies to counsel for all parties.

**IT IS SO ORDERED.**

/s/
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
February 14, 2006